**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BHF CHICAGO HOUSING GROUP C LLC (ERNST) | ) | Case No. 20-16567 |
| | ) | |
| | ) | Hon. Jack B. Schmetterer |
| Debtor. | ) | |
| | ) | |

**ORDER (A) APPROVING BID PROCEDURES AND BID PROTECTIONS,
(B) APPROVING NOTICE OF THE SALE, (C) SCHEDULING A SALE HEARING
AND, IF NECESSARY, AN AUCTION, AND (D) GRANTING RELATED RELIEF**

This matter coming to be heard on the motion (the "Motion") of BHF Chicago Housing Group C LLC (Ernst), debtor and debtor in possession (collectively, "Debtor"), for the entry of an order, (a) authorizing and approving the bid procedures in connection with the sale of the Property[1] free and clear of all liens, claims, and encumbrances; (b) approving the form and manner of notice of an auction and sale hearing with respect to the sale (the "Sale"); (c) scheduling such auction (if necessary) and sale hearing; (d) approving the selection of a stalking horse bidder (the "Stalking Horse Bidder"); and (e) granting related relief; it appearing that the relief requested is in the best interests of the Debtor's bankruptcy estate, its creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been

---

[1] The "Property" means the improved real property located in Chicago, Illinois consisting of 181 low income housing units in 17 buildings as more fully described in the Agreement.

1

adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth herein. All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.     Bid Procedures, Auction and Related Relief**

3. The Bid Procedures, as attached to the Sale Notice as **Exhibit A** and incorporated herein, are hereby approved in their entirety. Any party desiring to bid on the Property shall comply with the Bid Procedures.

**II.    Stalking Horse Bid**

4. The Debtor has entered into the Agreement with PRE Holdings 15, LLC as purchaser for the Property, and designates it as the "Stalking Horse Bidder" in accordance with the Bid Procedures. The Stalking Horse Bidder is approved.

5. The Bid Protections are approved. The Debtor is authorized to pay the Bid Protections, as applicable, to the Stalking Horse Bidder out of the proceeds from any Alternative Transaction at closing, pursuant to the Bid Procedures. The Bid Protections shall be paid from the proceeds of such transaction at closing as a superpriority administrative expense claim senior to all other administrative expense claims, and prior to any recovery by the Trustee under Section 364(c)(1) of the Bankruptcy Code. For the avoidance of doubt, the Bid Protections shall only maintain superpriority administrative expense status against the proceeds of any Alternative

Transaction and not against the Debtor's bankruptcy estate.

### III. Receiver's Fees and Costs

6. Except for the Earnest Money, Break-Up Fee, Expense Reimbursement, and Administrative Claim Fund[2], all liens, claims, encumbrances, and interests on the Property, including, without limitation, the asserted liens, claims, and encumbrances of the Receiver[3], the Trustee, and Paper Street Realty, LLC, shall attach to the proceeds from the Sale with the same force, effect, validity, and priority as such liens, claims, encumbrances, and interests had on such Property immediately prior to the closing of the Sale, pursuant to applicable law and/or any order entered by the Court.

7. For the avoidance of doubt, the Receiver's claims against the proceeds from the Sale shall include all fees and costs incurred by the Receiver with respect to the Property, including, without limitation, those reasonable attorneys' fees and costs incurred by the Receiver in the bankruptcy case (the "Receiver's Bankruptcy Fees"), to and including the closing of the Sale, notwithstanding whether such certificates have been filed with or approved by the Housing Court.[4]

8. Prior to and after Closing, the Housing Court shall retain jurisdiction to approve

---

[2] The Debtor will shortly file a motion to establish an administrative claim fund from the sale proceeds by which all administrative priority claims, pursuant to 11 U.S.C. §§ 503(b) and 507(a)(2), shall receive a *pro rata* distribution of the proposed administrative claim carve-out pursuant to further order of the Court. The U.S. Trustee Quarterly Fees may be paid without further order of the Court.

[3] The "Receiver" shall mean CNR Advisors, LLC, Community Initiatives, Inc., and any other receiver appointed by the Housing Court for all or any portion of the Property.

[4] To the extent that any of the Receiver's Bankruptcy Fees are not approved by the Housing Court in connection with the Receiver's certificates, the Receiver reserves the right to assert an administrative priority claim for any Receiver's Bankruptcy Fees and such administrative priority claim shall be resolved prior to the distribution of any sale proceeds. All Receiver's Bankruptcy Fees allowed by the Bankruptcy Court shall be entitled to administrative priority pursuant to 11 U.S.C. § 503(b) and recovery from the Administrative Claim Fund.

all certificates pursuant to 65 ILCS 5/11-31-2 and all applicable state laws (each, a "Certificate"). Upon the Housing Court's issuance of a Certificate, such Certificate shall constitute a "first lien upon the real estate and the rents and issues thereof, and shall be superior to all prior assignments of rents and all prior existing liens and encumbrances, except taxes" as set forth in 65 ILCS 5/11-31-2. All Receiver's certificates issued after closing of the Sale, pursuant to 65 ILCS 5/11-31-2, and the Receiver's Bankruptcy Fees, shall attach to and constitute liens against the proceeds of the Sale of the same priority as such liens would have had against the Property if issued prior to closing.

9. All net proceeds of the Sale shall be deposited in the debtor-in-possession bank account and not distributed until: (a) order of the Bankruptcy Court; and (b) all Receiver's certificates for fees and costs incurred to and including the closing of the Sale have been approved by the Housing Court, unless alternative arrangements are agreed to in writing by the City of Chicago, the Receiver, the Trustee, and the Debtor.

**IV.    Important Dates and Deadlines**

10. <u>Sale Notice, Auction and Sale Hearing</u>. The Sale Notice as attached hereto as **Exhibit 1** is approved. The Debtor shall serve a copy of the Sale Notice, including the Bid Procedures, on or before the date that is three (3) business days after entry of this Order, by first class mail on (a) the U.S. Trustee; (b) counsel to Trustee; (c) the Illinois Finance Authority; (d) counsel to the Stalking Horse Bidder; (e) all entities known to have expressed a bona fide interest in acquiring the Property; (f) any Receiver in possession of the Property; (g) the City of Chicago; (h) all known creditors of Debtor; (i) all tenants at the Property; (j) all federal, state, and local taxing authorities, recording offices or any other governmental authorities that may have claims, contingent or otherwise, against the Debtor's estate, or that are parties to governmental approvals

4

or permits, or that have a reasonably known interest in the relief requested by the Motion; (k) all known contractual counterparties to the Executory Contracts; and (l) all parties who have filed appearances or requested notices through the Court's CM/ECF system. The Debtor shall file a certificate of service with respect to service of the Sale Notice and any and all other forms of marketing, including without limitation, any notice of publication.

11. <u>Bid Deadline, Auction Date, and Objection Deadline</u>. The Bid Procedures shall govern the submission, receipt, and analysis of all Bids, and selection of the Successful Bidder relating to the proposed Sale of the Property, and dates and deadlines for any Auction or objections to the Sale. The following deadlines, as detailed in the Sale Notice and Bid Procedures, are applicable:

(a) The deadline by which all bids for the Property must be <u>actually received</u> shall be **October 23, 2020**;

(b) If one or more Qualified Bids, in addition to the Stalking Horse Bid, is received on or before the Bid Deadline, an Auction will be on **October 27, 2020**;

(c) The Debtor shall file and serve a proposed order approving the Sale no later than **October 28, 2020**;

(d) Objections, if any, to the Sale or Advisor Report must be filed with the Court and served no later than **October 30, 2020**

12. <u>Sale Hearing</u>. The Sale Hearing shall commence on **November 3, 2020 at 11:00 a.m.** before the Honorable Jack B. Schmetterer in Courtroom 682 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or before any other judge who may be sitting in his place and stead. The Sale Hearing may be adjourned without further notice other than by announcement in open Court or on the Court's calendar.

Date: September ___, 2020  
      Chicago, Illinois

_____  
United States Bankruptcy Judge

260662022.v1
260662022.v2

**Prepared By:**

Scott N. Schreiber (#06191042)
Kevin H. Morse (#06297244)
CLARK HILL PLC
130 East Randolph Street | Suite 3900
Chicago, Illinois 60601
T: (312) 985-5595
F: (312) 985-5984
sschreiber@clarkhill.com
kmorse@clarkhill.com

# Exhibit 1
## Sale Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BHF CHICAGO HOUSING GROUP B LLC (ICARUS) | ) ) | Case No. 20-12453 |
| | ) | Hon. Jack B. Schmetterer |
| Debtor. | ) ) | |
| | ) | |

**NOTICE OF BID PROCEDURES, AUCTION,
<u>AND SALE HEARING</u>**

   **PLEASE TAKE NOTICE** that on September 1, 2020, BHF Chicago Housing Group B, LLC (Icarus), debtor and debtor in possession (the "<u>Debtor</u>"), filed the *Debtor's Motion for Entry of (I) an Order (a) Approving Bid Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtor's Assets Free and Clear of all Lien, Claims, and Encumbrances, (b) Approving the Form and Manner of Notice, (c) Scheduling a Sale Hearing and, If Necessary, an Auction, (d) Approving the Stalking Horse Bid, and (e) Granting Related Relief; and (II) an Order (a) Approving the Purchase and Sale Agreement, (b) Authorizing the Sale of the Property Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (c) Granting Related Relief* (the "<u>Motion</u>")[1] with the United States Bankruptcy Court for the Northern District of Illinois (the "<u>Court</u>") seeking, among other things, entry of an order authorizing and approving: (a) the procedures for the sale of the Property[2] free and clear of liens, claims, interests, and encumbrances; (b) notice of the assumption and assignment of the designated executory contracts; (c) a hearing for the approval of the Sale and, if necessary, an auction; and (d) approving the Stalking Horse Bid.

   **PLEASE TAKE FURTHER NOTICE** that the Debtor has entered into a stalking horse agreement for the sale of the Property and is soliciting higher and better offers for the purchase of the Property consistent with the Bid Procedures (the "<u>Bid Procedures</u>") approved by the Court by entry of an order on September [●], 2020 [Docket No. [●]] (the "<u>Bid Procedures Order</u>"). **<u>All interested bidders should carefully read the Bid Procedures</u>**. A copy of the Bid Procedures is attached hereto as **Exhibit A**.

---

[1] All capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

[2] The "<u>Property</u>" means the improved real property located in Chicago, Illinois consisting of 545 low income housing units in 45 buildings as more fully described in the Agreement.

1

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, and any exhibits thereto, including the Bid Procedures Order, the Agreement, and the proposed Sale Order, are available: (a) upon request to counsel for the Debtor by e-mailing kmorse@clarkhill.com or by calling (312) 985-5556; or (b) for a fee via PACER by visiting http://www.ilnd.uscourts.gov.

Dated: September [●], 2020                    Respectfully submitted,

**BHF CHICAGO HOUSING GROUP B, LLC (ICARUS)**

By: /s/ *Kevin H. Morse*
           One of Its Attorneys

Scott N. Schreiber (#06191042)
Kevin H. Morse (#06297244)
Samuel J. Tallman (#6322843)
CLARK HILL PLC
130 East Randolph Street | Suite 3900
Chicago, Illinois 60601
T: (312) 985-5595
F: (312) 985-5984
sschreiber@clarkhill.com
kmorse@clarkhill.com
stallman@clarkhill.com

2

# Exhibit A
## Bid Procedures

**Bid Procedures**

a. **Property**. The "Property" means the improved real property located in Chicago, Illinois consisting of 181 low income housing units in 17 buildings as more fully described in the *Real Estate Purchase and Sale Agreement* entered into on August 13, 2020 by and between BHF Chicago Housing Group B LLC (the "Debtor") and PRE Holdings 15, LLC (collectively, the "Agreement"). The Property will be sold to the Stalking Horse Bidder subject to qualified overbids.

b. **Bid Requirements**. Any bid for the Property must be submitted in writing and determined by the Debtor, in its reasonable business judgment and in consultation with the Trustee[1] and City of Chicago, to have satisfied the following requirements (the satisfaction of which creates a "Qualified Bid" and "Qualified Bidder"):

  (i)   Initial Overbid:  Debtors have entered into the Agreement with PRE Holdings 15, LLC, or its designee, to be the Stalking Horse Bidder (the "Stalking Horse Bidder") for the purchase of the Property.  The consideration proposed by the aggregate of each competing bid seeking to acquire the Property must equal or exceed the sum of:

   (A)   cash in the amount of $4,500,000.00 (the "Stalking Horse Bid"); plus

   (B)   $50,000 in cash; plus

   (C)   The Break-Up Fee and Expense Reimbursement (defined in Paragraph 12(h) below) (collectively, the "Initial Overbid")

  (ii)  Deposit:  Each bid must be accompanied by a cash deposit in the amount of five percent (5%) of the bid to be held in an escrow account to be identified and established by Debtor, with the consent of the Trustee (the "Deposit").

  (iii) Agreement:  Each bid seeking to acquire the Property shall include a clean and blackline version clearly marked to show any changes requested by the bidder compared with the Agreement and all other required provisions set forth in these Bid Procedures, including, without limitation, the City of Chicago Bid Requirements set forth in Paragraphs b(viii)(A)-(B) of these Bid Procedures.  For the avoidance of doubt, the Agreement, or any other agreement contained in a Qualified Bid, remains subject to final approval by the Court at the Sale Hearing.

---

[1] The "Trustee" shall mean UMB Bank, N.A., not individually, but solely in its capacity as the duly-appointed and acting successor trustee under the indentures for the Multifamily Housing Revenue Bonds (Better Housing Foundation Ernst Portfolio Project), Series 2018A-1, Multifamily Housing Revenue Bonds (Better Housing Foundation Ernst Portfolio Project), Taxable Series 2018A-2, and Multifamily Housing Revenue Bonds (Better Housing Foundation Ernst Portfolio Project), Subordinate Series 2018B.

1

(iv)    Closing Date:  Each bid must provide for a closing to occur on or within fourteen (14) days of entry of the Sale Order, unless continued by agreement.

(v)    Competing Proposal; Bid Documents:  Except as otherwise provided herein, each bid must be, in reasonable business judgment of the Debtor, in consultation with the Trustee and City of Chicago, substantially on the same or better terms than the terms of the Agreement and the Stalking Horse Bid.  Each bid must include duly executed transaction documents necessary to effectuate the restructuring transactions contemplated in the bid (the "Bid Documents").

(vi)    Demonstrated Financial Capacity; Committed Financing:  A Bidder must have, in the Debtor's reasonable business judgment, in consultation with the Trustee and City of Chicago, the necessary financial capacity to consummate the proposed transactions required by its bid.  Each bid must also include committed irrevocable financing, documented to Debtor, the Trustee, and City of Chicago's reasonable satisfaction, that demonstrates the bidder has or will receive sufficient debt and/or equity funding commitments to satisfy the bidder's Purchase Price and other obligations under its bid, including the City of Chicago Bid Requirements (set forth below) and identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom the Debtor or any representative should contact regarding such committed financing.  Such funding commitments or other financing shall not be subject to any internal approvals, syndication requirements, diligence, credit committee approvals, or any other contingencies, and shall have covenants and conditions reasonably acceptable to the Debtor, after consultation with the Trustee and City of Chicago.

(vii)    Identity: Each bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bid (including each equity holder or other financial backer of the bidder if such bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any bid.  Each bid must also include contact information for the specific person(s) whom the Debtor or its representative should contact regarding such bid.

(viii)    City of Chicago Bid Requirements; Third Party Beneficiary:

(A)    All Qualified Bids, including the Stalker Horse Bidder, shall provide the City of Chicago, Department of Law (Attn: Greg Janes) and Debtor with: (a) proof of access to funds to rehabilitate the Property; (b) a proposal for rehabilitation of the Property and a plan to bring the Property into full compliance with the Municipal Code of Chicago within a reasonable time from the date of purchase with specific benchmarks for achieving such compliance (the "Proposal"); and (c) either (i) allow tenants to remain at the Property for at least 90 days or for the term of

2

their lease, whichever is greater; or (ii) provide Relocation Assistance.[2]

(B)    Enforcement. If the Successful Bidder fails to comply with the requirements set out in Paragraph b(viii)(A) above, the City of Chicago, Department of Law (Attn: Greg Janes) shall be entitled to enforce, as a third party beneficiary of the Agreement, the City of Chicago Bid Requirements set forth in the Agreement, in the Circuit Court of Cook County.

(C)    Proposal. The Proposal of the Successful Bidder shall be signed by the City of Chicago and Successful Bidder and included as an exhibit to the Sale Order to be incorporated into and made a part of the Agreement.

(ix)    Contingencies; No Financing or Diligence Outs: A bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence or on any other contingency.

(x)    Irrevocable: A Qualified Bid shall be irrevocable unless and until the Debtor accepts a higher Qualified Bid (as defined herein) and such bidder is not selected as the backup bidder (as defined herein).

(xi)    Expenses: Each bidder presenting a bid or bids shall bear its own costs and expenses (including legal fees) in connection with the proposed transaction.

(xii)    Authorization: Each bid must contain evidence that the bidder has obtained authorization or approval from its Board of Directors (or a comparable governing body acceptable to the Debtor) with respect to the submission of its bid and the consummation of the transactions contemplated in such bid.

(xiii)    As-Is, Where-Is: Each bid must include a written acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Property prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property or the completeness of any information provided in

---

[2] "Relocation Assistance" shall mean referrals to comparable and suitable replacement properties at market affordable rent and the reimbursement of reasonable and documented costs, including an application fee, security deposit and moving costs, not to exceed $1,500 in aggregate per unit, related to the involuntary relocation of a tenant prior to the expiration of 90 days from the closing of the Sale or the term of the lease, whichever is greater. No Relocation Assistance shall be provided if a tenant voluntarily vacates a unit prior to or upon the expiration of the 90-day period or the term of their lease.

260662022.v1

260662022.v2

connection therewith or the Auction, except as expressly stated in the bidder's proposed Agreement.

(xiv) <u>Existing Violations</u>. Each bid shall provide that the bidder must acquire the Property subject to all building code violations and court cases arising from building code violations (but not any monetary fines, penalties, or awards assessed before the closing date of such purchase).

c. **Bid Deadline**. Each bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before **October 23, 2020** by each of the following:

  (i) Debtor's counsel, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn.: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com);

  (ii) Trustee's counsel, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: James W. Kapp III (jkapp@mwe.com);

  (iii) City of Chicago's counsel, City of Chicago, Department of Law, City of Chicago, Department of Law, 30 N. LaSalle Street, Suite 700, Chicago, Illinois 60602, Attn: Greg Janes (greg.janes@cityofchicago.org) and Chuck King (chuck.king@cityofchicago.org); and

  (iv) Hilco Real Estate, LLC, 5 Revere Dr Suite 320, Northbrook, Illinois 60062, Attn: Jeffrey Azuse (jazuse@hilcoglobal.com) and Terence Rochford (trochford@hilcoglobal.com).

Any party interested in submitting a bid shall have the opportunity to enter the Property and make physical inspections and/or review all contracts, leases, permits, environmental reports, financial statements, and other such books and records related to the ownership and operation of the Property within the possession and control of the Receiver ("<u>Due Diligence</u>"). The Debtor shall cooperate and coordinate with the interested party and Receiver with the completion of the Due Diligence prior to the Bid Deadline.

d. **Auction**. If one or more Qualified Bids are submitted, in addition to the Stalking Horse Bid, the Debtor will conduct an auction (the "<u>Auction</u>") on **October 27, 2020 at 10:00 a.m. (Central Time)**, at Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, via video conference if necessary, to determine the highest and best offer with respect to the Property or any portion thereof.

  (i) No later than **October 25, 2020, at 5:00 p.m. (Central Time)**, the Debtor shall provide electronic notice to: (a) all Qualified Bidders; (b) the Stalking Horse Bidder; (c) the Trustee; and (d) the City of Chicago that Qualified Bids were timely received and the Auction whether the Auction will take place in person or via video conference (the "<u>Auction Notice</u>"). The Auction Notice shall contain

4

        specific instructions on how to access the Auction if held via a video conference platform, and further instructions (including telephone number for the Debtor's attorneys) should any issues arise preventing the parties identified in (a)-(d) from accessing the Auction via Zoom at any time.

        (ii)    The Auction Notice will be sent (a) via e-mail to counsel for the Stalking Horse Bidder, the Trustee, and the City of Chicago; and (b) to each Qualified Bidder via e-mail and in the manner and to the person designated by such Qualified Bidder pursuant to Paragraph 12 (b)(vii) above. A copy of the Auction Notice and a certificate of service shall be filed with the Court no later than October 12, 2020.

        (iii)    Following the Auction, the Qualified Bid(s) that, in the reasonable business judgment of Debtor, in consultation with the Trustee and City of Chicago, constitutes the highest and best offer and meets, at a minimum, all the Bid Requirements set forth herein, will become the "<u>Successful Bid</u>" and the applicable Qualified Bidder, the "<u>Successful Bidder.</u>"

        (iv)    Subject to court approval, the Successful Bidder will then be required to purchase the Property in accordance with the terms of the Successful Bid. If no additional Qualified Bids are submitted, the Debtor will cancel the Auction and proceed with the Stalking Horse Bid as the Successful Bid.

e.    **Terms of Overbids**. During the course of the Auction, Debtor shall, after the submission of each overbid, promptly inform each Qualified Bidder which overbid reflects, in the view of the Debtor, in consultation with the Trustee and City of Chicago, the highest or otherwise best bid for the Property or any portion thereof. All overbids in excess of the Initial Overbid at the Auction shall initially be in minimum increments of at least $25,000 in cash.

f.    **Highest or Otherwise Best Bid**. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor, in consultation with the Trustee and City of Chicago, shall consider the following factors in addition to any other factors that Debtors deem appropriate: (i) the number, type, and nature of any changes to the applicable Agreement requested by the Qualified Bidder; (ii) the amount and nature of the total consideration; (iii) the likelihood of the bidder's ability to close a transaction and the timing thereof; (iv) the net economic effect of any changes to the value to be received by Debtor's estate from the transaction contemplated by the Bid Documents; (v) the tax consequences of such Qualified Bid; and (vi) compliance with the Chicago of Chicago Bid Requirements set forth in Paragraphs b(viii)(A)-(B) above.

g.    **Backup Bidder**. If an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Property or any portion thereof, as determined by Debtor in the exercise of its reasonable business judgment, in consultation with the Trustee and City of Chicago, shall be required to serve as "<u>Backup Bidder</u>." Should the Successful Bidder fail to consummate the sale of the Property, for

5

    any reason whatsoever, the Backup Bidder will become the new Successful Bidder and will be both entitled and obligated to consummate the sale of the Property. Debtor may designate as many Backup Bidders as necessary until either the Property is sold or no Qualified Bidders remain eligible to serve as Backup Bidder.

h.     **Bid Protections**. In the event that the Debtor accepts a Successful Bid in accordance with the Bid Procedures (an "Alternative Transaction"), other than an overbid by the Stalking Horse Bidder, the Stalking Horse Bidder shall be entitled to: (i) a break-up fee in cash of three percent (3%) of the Purchase Price (the "Break-Up Fee"), (ii) return of the Earnest Money, and (iii) any properly documented, reasonable costs and expenses incurred by Purchaser in negotiating and documenting the Proposed Transaction in an amount up to $100,000 (the "Expense Reimbursement"). The Break-Up Fee and Expense Reimbursement shall be paid in cash from the proceeds of, and concurrent, with the closing of any Alternative Transaction or as otherwise ordered by the Bankruptcy Court. The Break-Up Fee shall be paid as and constitute a superpriority administrative expense claim senior to all other administrative expense claims and payable only from the proceeds from any Alternative Transaction, prior to any recovery by any lienholder under Section 364(c)(1) of the Bankruptcy Code. For the avoidance of doubt, the Stalking Horse Bidder shall not be provided a credit for the Break-Up Fee or Expense Reimbursement in any overbid and any such overbid must be paid in cash. Furthermore, the Break-Up Fee shall constitute a superpriority administrative expense claim solely against the proceeds of an Alternative Transaction and shall not be a claim against the Debtor's estate.

i.     **Credit Bid.** The Trustee shall be allowed to credit bid for the Property pursuant to Section 363(k) of the Bankruptcy Code at any auction held in the Bankruptcy Case, subject to any valid liens or claims of greater priority. If the Trustee is the Successful Purchaser in an Alternative Transaction, the Trustee shall pay in cash at Closing: (i) the Purchaser its Break-Up Fee and Expense Reimbursement, and (ii) all valid liens or claims of greater priority.

j.     **Return of Deposit**. The Successful Bidder's Deposit shall be applied to the purchase price of such transaction at closing. The Deposit of each Qualified Bidder, including the Stalking Horse Bidder if it is not the Successful Bidder or Backup Bidder, shall be held in one or more escrow accounts on terms acceptable to Debtor, after consultation with the Trustee, and shall be returned (other than with respect to any Successful Bidder or Backup Bidder) on or within five (5) business days after the Auction. If a Successful Bidder (other than the Stalking Horse Bidder) fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtor shall not have any obligation to return the Deposit attributable to such Successful Bidder, which may be retained by Debtor as damages, without limiting any and all rights, remedies, and/or causes of action that may be available to the Debtor, and Debtor shall be free to consummate the proposed transaction with the Backup Bidder without the need for an additional hearing or order of the Bankruptcy Court.

k. **Return of Stalking Horse Earnest Money Deposit.** In the event the Sale to the Stalking Horse Bidder or an Alternative Transaction fails to close, including, without limitation, termination pursuant to Section 6 of the Agreement, then the Break-Up Fee and Expense Reimbursement will not be paid to the Stalking Horse Bidder, and the Stalking Horse Bidder will receive a return of $100,000 of the Earnest Money Deposit within three (3) business days of the termination of the Agreement.

l. **Reservation of Rights.** Debtor reserves its right, in its reasonable business judgment and in consultation with the Trustee and City of Chicago, to adjourn the Auction at the Auction and/or adjourn the Sale Hearing in open court without further notice. Debtor also reserves its right, on Notice of Motion and Motion, to seek to modify these bid procedures in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Property, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis; (c) canceling the Auction; (d) rejecting any or all Bids or Qualified Bids (other than the Stalking Horse Bid); and (e) increasing the Minimum Overbid Increment.

m. **Sale Objection Deadline.** Objections, if any, to the Sale must be filed with the Court and served via email (in .pdf or similar format) so as to be **actually received** on or before **October 30, 2020** (the "Objection Deadline") or such other deadline as set by the Court:

> (i) Debtor's counsel, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn.: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com);
>
> (ii) Trustee's counsel, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: James W. Kapp III (jkapp@mwe.com);
>
> (iii) City of Chicago's counsel, City of Chicago, Department of Law, City of Chicago, Department of Law, 30 N. LaSalle Street, Suite 700, Chicago, Illinois 60602, Attn: Greg Janes (greg.janes@cityofchicago.org) and Chuck King (chuck.king@cityofchicago.org).

For the avoidance of doubt, any party asserting a lien in the proceeds of the Sale may file an objection to the Sale, on or prior to the Objection Deadline, contesting the sale of the Property free and clear of such asserted liens or contesting the priority of any other lien, claim, or encumbrance against the Property.

n. **Sale Hearing.** The Sale Hearing shall take place on **November 3, 2020 at 11:00 a.m. (Central Time)** before the Honorable Jack B. Schmetterer, or before any other judge who may be sitting in his place and stead. The Sale Hearing may be adjourned (with the

7

consent of the Stalking Horse Bidder or Successful Bidder and Trustee not to be unreasonably withheld) without further notice other than by announcement in open Court or on the Court's calendar. The Debtor shall file and serve a proposed order approving the Sale no later than **October 28, 2020**.